UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

―――――

|  |  |  |
|---|---|---|
| LORI S. HILL, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:12-cv-235 |
| | ) | |
| v. | ) | Honorable Joseph G. Scoville |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | **OPINION** |
| Defendant. | ) | |
| | ) | |

This is a social security action brought under 42 U.S.C. § 1383(c)(3) seeking judicial

review of a final decision of the Commissioner of Social Security denying plaintiff's claim for

supplemental security income (SSI) benefits. On March 12, 2008, plaintiff filed her application for

benefits, alleging a January 1, 2004 onset of disability.[1] (A.R. 132-35). Her claim was denied on

initial review. On June 15, 2010, plaintiff received a hearing before an ALJ, at which she was

represented by counsel. (A.R. 27-76). On July 27, 2010, the ALJ issued a decision finding that

plaintiff was not disabled. (A.R. 14-23). On February 1, 2012, the Appeals Council denied review

(A.R. 1-3), and the ALJ's decision became the Commissioner's final decision.

―――――――――――――――

[1]SSI benefits are not awarded retroactively for months prior to the application for benefits.
20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also
Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). The earliest month in
which SSI benefits are payable is the month after the application for SSI benefits is filed. Thus,
April 2008 is plaintiff's earliest possible entitlement to SSI benefits.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties voluntarily consented to have a United States magistrate judge conduct all further proceedings in this case, including entry of final judgment. (docket # 9). Plaintiff asks the court to overturn the Commissioner's decision based on arguments that the ALJ "erroneously failed to give appropriate weight to the opinions of [] treating sources, violated agency rules, failed in his duties to provide a fair and full hearing and misapplied the law." (Plf. Brief at 2, docket # 10). The court finds that plaintiff's arguments do not provide any basis for disturbing the Commissioner's decision. A judgment will be entered affirming the Commissioner's decision.

## **Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence

shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013)("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## Discussion

The ALJ found that plaintiff had not engaged in substantial gainful activity on or after March 12, 2008. (A.R. 16). Plaintiff had the following severe impairments: "major depressive disorder, anxiety disorder, borderline intellectual functioning, and degenerative disc disease." (A.R. 16). The ALJ found that plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 17). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except no climbing of ladders, ropes, or scaffolds; occasional crawling and climbing of ramps and stairs; and the claimant can understand, remember, and carry out short and simple instructions while performing routine predictable tasks not in a fast-paced production environment and can make simple decisions with no contact with the general public or coworkers and only incidental contact with supervisors.

(A.R. 19). The ALJ found that plaintiff's subjective complaints were not fully credible. (A.R. 19-21). Plaintiff did not have past relevant work. (A.R. 21). She was 38-years-old on the date she filed her application for SSI benefits and 40-years-old as of the date of the ALJ's decision. Thus, plaintiff was classified as a younger individual at all times relevant to her claim for SSI benefits. (A.R. 21). Plaintiff has a limited education and is able to communicate in English. (A.R. 21). Because plaintiff had no past relevant work, the transferability of work skills was not an issue. (A.R. 22). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were approximately 22,000 jobs in the State of Michigan that the hypothetical person would be capable of performing. (A.R. 71-72). The ALJ found that this constituted a significant number of jobs. Using Rule 202.17 of the Medical-Vocational Guidelines as a framework, the ALJ held that plaintiff was not disabled. (A.R. 22-23).

### 1.

Plaintiff argues that the ALJ failed to give "appropriate weight" to the "Mental Impact Questionnaire" responses her therapist gave to her attorney. (Plf. Brief at 2-3). The court finds no basis for disturbing the Commissioner's decision. A therapist is not an "acceptable medical source." *See* 20 C.F.R. §§ 416.913(a), (d)(1). There is no "treating therapist rule," and the opinion of a

therapist is not entitled to any particular weight. Only "acceptable medical sources" can: (1) provide evidence establishing the existence of a medically determinable impairment; (2) provide a medical opinion; and (3) be considered a treating source whose medical opinion could be entitled to controlling weight under the treating physician rule. *See Titles II and XVI: Considering Opinions and Other Evidence from Sources Who are not 'Acceptable Medical Sources' in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies*, SSR 06-3p (reprinted at 2006 WL 2329939, at * 2 (SSA Aug. 9, 2006)); *see also Bliss v. Commissioner*, 406 F. App'x 541 (2d Cir. 2011) ("[T]he assessment by the social worker is ineligible to receive controlling weight because social workers do not qualify as 'acceptable medical sources.'"); *Turner v. Commissioner*, 613 F.3d 1217, 1223-24 (9th Cir. 2010). The opinions of a therapist fall within the category of information provided by "other sources." *See* 20 C.F.R. § 416.913(d)(1). The social security regulations require that information from other sources be "considered." 2006 WL 2329939, at * 1, 4 (citing 20 C.F.R. §§ 404.1513, 416.913); *see Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011); *Cruse v. Commissioner*, 502 F.3d 532, 541 (6th Cir. 2007). This is not a demanding standard. It was easily met here. The ALJ found that the restrictions suggested by Ms. Wiggins were not supported by the record:

> The undersigned has also considered the statements of Susan Wiggins, who has a <u>limited</u> license in professional counseling (LLPC) and is a certified advanced addiction counselor (CACC). Ms. Wiggins made statements indicating that the claimant has a diagnosis of a schizoaffective disorder and also made statements indicating that the claimant is unable to meet competitive standards in multiple areas of mental functioning (Exhibits 9F, 11F, and 12F). The undersigned gives very little weight to these statements since the statements of Ms. Wiggins are inconsistent with the overall objective medical evidence of record, she is not an acceptable medical source in accordance with Social Security Ruling 06-03p and Social Security Regulations at 20 CFR 416.902, and she has had only 5 sessions with the claimant (Exhibit 12F). It is significant that no physician has indicated that claimant is unable to work.

(A.R. 21). The ALJ applied the correct legal standards and his factual findings are supported by more than substantial evidence.

Plaintiff presented very little evidence in support of her claim for SSI benefits. She has no history of psychiatric hospitalization. She testified that she fled Michigan in 2003 to avoid criminal prosecution. She returned in 2007 and was arrested. She was convicted of the felony of fleeing and eluding a police officer and served a brief period in jail. (A.R. 30, 39-42). The ALJ noted: "The claimant stated that she has a history of smoking marijuana and that she continues to smoke it every couple of week[s]. The claimant also stated that in the year 2007 she was smoking marijuana 3 to 4 times a day every day but stopped using it every day in the year 2007 when she returned to the State of Michigan after fleeing and eluding police officials for four years." (A.R. 20). "The undersigned recognizes that the claimant's continued use of marijuana has an adverse effect on her medical problems. Even despite the claimant's alleged limitations, the claimant obviously is able to interact with others to obtain her drugs and was able to flee and elude authorities for four years . . . ." (A.R. 20).

On March 12, 2008, plaintiff filed her application for SSI benefits. On August 3, 2008, she received a consultative examination. Plaintiff reported that she had never been hospitalized as an adult for any health reasons and that she had "never been psychiatrically hospitalized." (A.R. 193). The ALJ summarized the results of the psychologist's examination as follows:

> On mental status testing, the claimant's memory and concentration were grossly intact, there was no evidence of psychosis, she was oriented times three although her affect was tearful and anxious throughout the interview. Results of the WAIS-III demonstrated the claimant to have a verbal I.Q. score of 72, performance I.Q. score of 77, and full-scale I.Q. score of

> 72.  The claimant was assessed with major depression, panic attacks without agoraphobia, borderline intellectual functioning and she was given a good prognosis (Exhibit 1F).

(A.R. 17).

On October 21, 2008, plaintiff saw Nasir Kahn, M.D.  Plaintiff reported a history of bipolar disorder.  Dr. Khan observed:  "no evidence to suggest bipolarity at this point in time.  She appeared very appropriate." (A.R. 275).  Plaintiff reported a history of tobacco abuse.  Dr. Kahn advised her to quit smoking.  (A.R. 275).

Ahmad Gill, M.D., had the most frequent contact with plaintiff as her treating physician.  Dr. Gill never expressed an opinion that plaintiff suffered from disabling mental or physical impairments.  On May 26, 2009, plaintiff reported to Dr. Gill that she had experienced lower back and hip pain after falling in the snow in January 2009 "while chasing her dog."  (A.R. 271).  X-rays of her hip and back were "normal," with the exception of "partial sacralization of L5 with pseudoarthritis on the left" and "mild narrowing of the L5-S1 disc space, consistent with mild degenerative changes."  (A.R. 298-99).  Dr. Gill advised plaintiff to stop smoking.  (A.R. 271).  On July 9, 2009, plaintiff reported that the Flexeril and Motrin prescribed by Dr. Gill had not provided adequate pain relief.  Dr. Gill gave her a prescription for Valium.  (A.R. 267).  In August 2009, Gill discontinued the Valium prescription and he referred plaintiff to Arbor Circle for mental health treatment.  (A.R. 263).  On September 10, 2009, plaintiff reported to Dr. Gill that she had been "extremely anxious about being unable to go out.  She said that she [could not] tolerate being among people since it ma[de] her unbelievably anxious."  Dr. Gill gave plaintiff a Xanax prescription. (A.R. 262).  On October 8, 2009, Gill advised plaintiff to "stick to the prescribed regimen and not to take [Xanax] in amounts greater than prescribed."  (A.R. 260).  He provided plaintiff with a prescription for Celexa.  (A.R. 260).  Dr. Gill observed that the back and lower extremity pain that

plaintiff reported "d[id] not really correspond with physical examination." (A.R. 260). Plaintiff later reported that her depression was under better control with Celexa. (A.R. 258).

In September 2009, plaintiff received an intake assessment at Arbor Circle. She related that she continued to smoke marijuana, smoke almost two packs of cigarettes per day, and consume alcohol. (A.R. 244). On October 18, 2009, Arbor Circle discharged plaintiff as a patient because she did not attend any therapy sessions. (A.R. 241-42).

On January 27, 2010, Ms. Wiggins, a limited license counselor, completed a "Mental Impact Questionnaire." Plaintiff had attended only two therapy sessions with Wiggins, the first on December 22, 2009 and the second on January 12, 2010. (A.R. 250). Ms. Wiggins performed no tests, but she offered a diagnosis of a schizoaffective disorder. (A.R. 250). Based on the information plaintiff reported, Ms. Wiggins offered her opinion that plaintiff was "unable to meet competitive standards" in numerous areas and had a "complete inability to function independently" outside her home. (A.R. 251-55). On May 24, 2010, Ms. Wiggins stated that after three additional therapy sessions, her opinions were unchanged. (A.R. 324).

The ALJ correctly applied the law. His finding that the extreme restrictions suggested by Ms. Wiggins were entitled to "very little weight" is supported by more than substantial evidence.

## 2.

Plaintiff argues that the ALJ failed to "develop the record" because he "refused to hold the record open to allow for potentially supportive records to be presented on the Claimant's behalf." (Plf. Brief at 6). This argument suffers from numerous fatal flaws. First, the ALJ's special duty to *pro se* parties to develop the record does not extend to plaintiff, because she was represented

by an attorney at the hearing. *See Smith v. Commissioner*, 473 F. App'x 443, 445 (6th Cir. 2012); *Kelly v. Commissioner*, 314 F. App'x 827, 831 n.1 (6th Cir. 2009).

Second, plaintiff's attorney's bare assertion that documents outside the certified administrative record were "potentially supportive" does not suffice. If the records had any significance, it was up to plaintiff's attorney to produce them and ask the court to remand this matter to the Commissioner under sentence six of 42 U.S.C. § 405(g) for consideration of such evidence. Plaintiff did not make such a request, and she made no attempt to satisfy her statutory burden for a remand to the Commissioner under sentence six of section 405(g). *See Ferguson v. Commissioner*, 628 F.3d 269, 276 (6th Cir. 2010).

Third, it is pellucid from the hearing transcript that the reason the ALJ declined to keep the record open was that plaintiff's then-recent hospitalization had been for a bowel or bladder problem, but her claim of disability was based primarily on her mental impairments:

> ALJ:      Now, speaking of Ms. Spencer. Do you have any new documents, any other new documents that I need to, that need to be before me?
>
> ATTY:     Your Honor, I don't have new documents although Miss Hill was recently hospitalized. She just got out of the hospital at St. Mary's, June 4, and from what I understand from what she's telling me, it had something to do with a bowel or bladder problem. We did order those records as soon as she called us, but we don't have those yet.
>
> ALJ:      All right. I'm not going to hold the record open for those.
>
> ATTY:     Okay.
>
> ALJ:      I mean those don't seem central to what we have here, which is primarily a mental health case.
>
> ATTY:     Right.

(A.R. 31).

If counsel had an objection to the ALJ's decision, it should have been lodged at the time. Lying in the weeds until an appeal is not consistent with a claim of fundamental error. More basically, plaintiff has not demonstrated how her hospital records concerning a bowel or bladder problem could be material to any of the issues before the ALJ.

**3.**

Plaintiff argues that the Commissioner's decision should be overturned because the ALJ was biased against her and he violated the Supreme Court's holding in *Richardson v. Perales*, 402 U.S. 389 (1971).

A.    <u>Bias</u>

Plaintiff provides a series of criticisms of the manner in which the ALJ conducted the administrative hearing:

> During the hearing Judge Erickson presented with an aggressive, unyielding overtone from the onset. Initially, when Judge Erickson felt the Claimant was not responding in a loud enough tone, he brashly stated "You need to speak up -- If we're going to have a conversation here, I expect very firm interaction with you and me." (AR 30). Such an aggressive approach, especially from the outset can severely hinder an individual's ability to appropriately answer questions and interact with the Judge throughout the process. Additionally, the judge stated that the hearing was a "low threat" environment. To individuals such as the Claimant who suffer severe mental impairments, the statement of "low threat" does not portray to them a safe, non-threatening environment and can enhance their anxiety levels, again hindering their ability to effectively interact in the hearing process. The Judge's brash interaction caused the claimant unnecessary anxiety resulting in the need for a break.

(Plf. Brief at 1-2). Upon review, the court finds that plaintiff's characterization of the record is irresponsible and inaccurate and does not approach the convincing evidence of actual bias necessary to overcome the presumption that the ALJ was impartial.

-10-

The ALJ is presumed to have exercised his powers with honesty and integrity, and the plaintiff has the burden of overcoming the presumption of impartiality "with convincing evidence that a risk of actual bias or prejudgment is present." *Collier v. Commissioner*, 108 F. App'x 358, 364 (6th Cir. 2004) (citing *Schweiker v. McClure*, 456 U.S. 188, 196 (1982), and *Navistar Int'l Transp. Corp v. EPA*, 921 F.2d 1339, 1360 (6th Cir. 1991)); *see Bailey v. Commissioner*, 413 F. App'x 853, 856 (6th Cir. 2011) ("We presume that judicial and quasijudicial officers, including ALJs, carry out their duties fairly and impartially."). Plaintiff has the burden of providing "convincing evidence that a risk of actual bias or prejudgment is present." *See Bailey*, 413 F. App'x at 856; *see Collier*, 108 F. App'x at 364. For the alleged bias to be disqualifying, it must "stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966); *see Miller v. Barnhart*, 211 F. App'x 303, 305 n.1 (5th Cir. 2006). "[A]ny alleged prejudice on the part of the decisionmaker must be evident from the record and cannot be based on speculation or inference." *Carrelli v. Commissioner*, 390 F. App'x 429, 436-37 (6th Cir. 2010); *see Perschka v. Commissioner*, 411 F. App'x 781, 788 (6th Cir. 2010) ("An adverse ruling alone is not enough to support a finding of bias."). "[E]xpressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display" are insufficient to establish bias. *Liteky v. United States*, 510 U.S. 540, 555-56 (1994).

The transcript reveals that the ALJ encouraged plaintiff to speak up so that he could hear her testimony. (A.R. 30). He had plaintiff's attorney confirm on the record that she had discussed the nature of the hearing and the relevant issues with her client. (A.R. 33-34). He advised plaintiff that although the proceedings were informal, she would be giving her testimony under oath:

ALJ: Okay. All right. Miss Hill, now we can get down to the, the meat of this thing. I will swear you in. This is an informal proceeding as you can tell here. We're in a hotel, you know, in lovely Grand Rapids, so it's an informal proceeding, but testimony must be taken under oath or affirmation here today. So I'll be taking testimony from Mr. Holwerda and yourself so I'll need to swear both of you in.

(A.R. 34). Plaintiff was placed under oath, but she failed to provide an audible response to a routine question about her age and indicated that she was very nervous. The ALJ attempted to reassure plaintiff and allowed her a break to regain her composure:

(The Claimant, LORI SUE HILL, having first been duly sworn, testified as follows:)

EXAMINATION OF THE CLAIMANT BY ADMINISTRATIVE LAW JUDGE:

Q	Miss Hill, now it is appropriate for me to have a conversation with you about what's happening with you and the nature of your case. So are you ready to do that? You ready to have a conversation with me?

A	Yes, sir.

Q	Okay. Let's do that. You are now 40 years old. Is that correct? And --

A	(No audible response.)

ATTY:	You have to answer out loud.

Q	Yeah. You've got to always be, I need verbal responses. Okay? So are you ready to do this today?

A	Really nervous.

You're nervous. Just relax. This is a, not a, this is a low-threat environment. Okay. As they say. I'm an ex-military man. As they say, it's a low-threat environment. We're just here to hear about you -- take it easy now. Miss Hill, take it easy. All right. Let's take a few moments here.

(A.R. 35-36). The hearing resumed and plaintiff gave her testimony without further interruption. There was nothing objectionable in the ALJ's questioning. Plaintiff's attorney did not object. These are not the statements of a biased or aggressive hearing officer. Counsel's selective quotations from

the record in an effort to impugn the ALJ's integrity is unavailing. The court finds no evidence that the ALJ was biased against plaintiff or her attorney, much less the convincing evidence of actual bias that is necessary to overcome the presumption of impartiality.

B.    "[A]ssum[ing] the role of counsel to the vocational expert"

Plaintiff argues that the ALJ acted "in direct contravention" of the Supreme Court's holding in *Richardson v. Perales* because he "advised the vocational expert that he may 'want to ask for clarification' of a question the Claimant's counsel had already presented." (Plf. Brief at 6). According to plaintiff, "[i]n doing so[,] the Commissioner became a partisan and assumed the role of counsel to the vocational expert and acted in direct contravention of the Court's holding in *Richardson*." (Plf. Brief at 6).

The entire notion that the ALJ "assumed the role of counsel" for the VE is nonsensical. The VE is an expert witness, not a party. *See Massey v. Commissioner*, 409 F. App'x 917, 922 (6th Cir. 2011); *see also Saunders v. Commissioner*, No. 1:08-cv-1136, 2010 WL 1132286, at * 6 n. 3 (W.D. Mich. Mar. 3, 2010) ("The ALJ was not bound to accept the testimony of any witness, including the VE.") (citing *Banks v. Massanari*, 258 F.3d 820, 827-28 (8th Cir. 2001)).

Further, the ALJ is the presiding officer at the administrative hearing. It is beyond question that the ALJ can ask any witness for clarification of his or her testimony. If the ALJ cannot understand testimony, it is of little use. Here, the ALJ sought and obtained a clarification of the expert's testimony in response to plaintiff's attorney's hypothetical question asking the expert to assume an individual "unable" to maintain socially appropriate behavior:

Q.    If you assumed an individual who had no useful ability to interact appropriately with the general public, had, was unable to meet competitive standards with regard to

maintaining socially appropriate behavior, traveling in unfamiliar places, or using public transportation. Would those limitations be preclusive?

A      I think the second one that you mentioned might, could be work preclusive.

Q      To maintain socially appropriate behavior?

A      Correct.

Q.      Okay.

ALJ:      Now, again though, now how often are we -- I mean how often are we have -- I mean, everybody has socially inappropriate moments. I probably have one once a day. I mean, you know, with all due respect, how often are we talking about this? He has, you have to quantify these questions[.]

      BY ADMINISTRATIVE LAW JUDGE:

Q      I'm sure you, I mean, Dr., Mr. Holwerda, everybody has an incident, and we don't know what kind of incident it is. So I think you do, you may want to ask for clarification, Mr. Holwerda, about that question. I mean --

A      But the adjective was, unable. So I think, I took that to mean --

Q      Unable?

A      -- simply unable was how I took it.

Q      Okay. So you're talking about 100 percent of the time, now, or thereabouts. Okay. I guess I can live with that, yeah. If they're totally unable, I understand.

ATTY:      I think that's all I have, Your Honor.

(A.R. 74-75). Plaintiff's attorney did not avail herself of the opportunity to ask follow-up questions.

The ALJ did not violate the Supreme Court's holding in *Richardson v. Perales*. In *Richardson*, the Court defined the issue before it as follows: "The issue here is whether physicians' written reports of medical examinations they may have made of a disability claimant may constitute 'substantial evidence' supportive of a finding of nondisability, within the § 205(g) standard, when the claimant objects to the admissibility of those reports and when the only live testimony is

-14-

presented by his side and it is contrary to the reports." 402 U.S. at 390. The Supreme Court held that such reports could be received as evidence in disability hearings and constitute substantial evidence supporting a hearing examiner's decision.[2] *Id.* at 402. One of the arguments that the Court rejected in reaching this holding was an argument which sought to have the social security hearing procedure declared invalid on due-process grounds because the hearing examiner wore "too many hats" in the administrative process. *Id.* at 408-09. The Court stated that it was not persuaded by the "advocate-judge-multiple-hat suggestion." *Id.* at 410. The argument "assume[d] too much and would bring down too many procedures designed, and working well, for a governmental structure of great and growing complexity." *Id.* at 410. "The social security hearing examiner, furthermore, does not act as counsel. He acts as an examiner charged with developing the facts." *Id.* The statistical data "attest[ed] to the fairness of the system and refute[d] the implication of impropriety." *Id.* The Supreme Court's holding in *Richardson* did not address any questions or comments made by an ALJ, nor did the Court conclude that by posing questions or making comments the ALJ somehow assumes the role of counsel for the defendant or the VE. The ALJ's conduct in this case was entirely consistent with his role as the official charged with making factual findings and the ultimate administrative determination whether the claimant was disabled.

---

[2]Administrative law judges were formerly known as hearing examiners. *See Teal v. Matthews*, 425 F. Supp. 474, 478 (D. Md. 1976); *Kennedy v. Weinberger*, 369 F. Supp. 336, 337 (E.D. Pa. 1974).

## **Conclusion**

For the reasons set forth herein, a judgment will be entered affirming the Commissioner's decision.

Dated:   June 13, 2013                    /s/  Joseph G. Scoville_____
                                         United States Magistrate Judge